# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PAZ, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AG ADRIANO GOLDSCHMEID, INC., a California corporation, et al.,<br><br>Defendants. | CASE NO. 14cv1372 DMS (DHB)<br><br>**ORDER DENYING MOTION TO DISMISS COMPLAINT** |

This case comes before the Court on the motion of Defendants AG Adriano Goldschmeid, Inc. ("AG") and Nordstrom, Inc. to dismiss Plaintiff's Complaint. Plaintiff filed an opposition to the motion, and Defendants filed a reply. For the reasons set out below, the Court denies Defendants' motion.

## I.
## BACKGROUND

This putative class action case concerns the sale and marketing of Defendant AG's products. AG is a designer and manufacturer of denim jeans products for men and women. (Compl. ¶ 6.) It sells its products through its own retail stores, online and through other high end retailers such as Defendant Nordstrom. (*Id.*)

One of AG's products is "The Protégé" brand jean. (*Id.*) This product, like many of AG's other products, is marked with a "Made in the U.S.A." label. (*Id.* ¶ 19.) Plaintiff alleges that on May 16, 2014, he purchased a pair of "The Protégé" brand jeans

at a Nordstrom store in San Diego, California. (*Id.*) Plaintiff alleges he relied on this representation when purchasing the jeans, and that he "believed at the time he purchased THE PROTÉGÉ that he was supporting U.S. jobs and the U.S. economy." (*Id.* ¶ 20.)

Plaintiff alleges, however, that the jeans "actually contain[ ] component parts made outside of the United States." (*Id.*) Specifically, he alleges the fabric, thread, buttons, rivets, and/or certain subcomponents of the zipper assembly of the jeans (and presumably all other offending AGAG apparel products) are manufactured outside the United States. (*Id.* ¶ 15.)

In light of this alleged disparity, Plaintiff filed the present case on behalf of "all persons in the United States who purchased one or more of Defendants' AGAG apparel products during the relevant four-year statutory time period that bore a 'Made in the U.S.A.' country of origin designation but that contained foreign-made component parts[.]" (*Id.* ¶ 26.) He also alleges claims on behalf of a subclass of "all of Defendants' California customers who purchased AGAG apparel products that were labeled as 'Made in the U.S.A. OF IMPORTED FABRIC' that contained foreign-made component parts beyond the fabric (e.g., rivets, thread, buttons, and/or subcomponents of the zipper assembly) during the relevant four-year statutory time period[.]" (*Id.* ¶ 27.) In the Complaint, Plaintiff alleges the following claims for relief: (1) violation of California's Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.*, (2) violation of California's Unfair Business Practices Act, California Business and Professions Code § 17200, *et seq.* and (3) violation of California Business and Professions Code § 17533.7. In response to the Complaint, Defendants filed the present motion.

## II.
## DISCUSSION

Defendants move to dismiss the Complaint in its entirety on the ground Plaintiff's claims are preempted by the Federal Trade Commission Act ("FTCA") and

the Textile Fiber Products Identification Act ("TFPIA"). Plaintiff disputes that his claims are preempted by either statute.

"The preemption doctrine stems from the Supremacy Clause. It is a 'fundamental principle of the Constitution [ ] that Congress has the power to preempt state law.'" *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013), *cert. denied by Arizona v. Valle del Sol, Inc.*, ___ U.S. ___, 134 S.Ct. 1876 (2014), (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)). "There are 'three classes of preemption': express preemption, field preemption and conflict preemption." *Id.* (quoting *United States v. Alabama*, 691 F.3d 1269, 1281 (11th Cir. 2012)).

In this case, Defendants rely on the doctrine of conflict preemption. With conflict preemption, "state law is naturally preempted to the extent of any conflict with a federal statute.'" *Id.* at 1023 (quoting *Crosby*, 530 U.S. at 372). Conflict preemption "has two forms: impossibility and obstacle preemption." *Id.* (citing *Crosby*, 530 U.S. at 372). "Courts find impossibility preemption 'where it is impossible for a private party to comply with both state and federal law.'" *Id.* (quoting *Crosby*, 530 U.S. at 372). "Courts will find obstacle preemption where the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Arizona v. United States*, ___ U.S. ___, 132 S.Ct. 2492, 2501 (2012)) (internal quotation marks omitted).

> Analysis of a preemption claim "must be guided by two cornerstones of [the Supreme Court's] jurisprudence. First, the purpose of Congress is the ultimate touchstone in every pre-emption case. Second, [i]n all pre-emption cases, and particularly in those in which Congress has legislated ... in a field which the states have traditionally occupied, ... we start with the assumption that the historic police powers of the State were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

*Id.* (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)) (internal quotation marks omitted). As the parties asserting preemption, Defendants carry the burden of proof. *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 733 F.3d 393, 414 n.21 (2d Cir. 2013).

**A.     The FTCA**

The FTC was established to prevent corporations "from using unfair methods of competition in or effecting commerce and unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a)(2).  The specific provision of the FTCA at issue in this case is 15 U.S.C. § 45a, which concerns labels on products.  It states, in pertinent part:

> To the extent any person introduces, delivers for introduction, sells, advertises, or offers for sale in commerce a product with a "Made in the U.S.A." or "Made in America" label, or the equivalent thereof, in order to represent that such product was in whole or in substantial part of domestic origin, such label shall be consistent with decisions and orders of the Federal Trade Commission issued pursuant to section 45 of this title.  This section only applies to such labels.  Nothing in this section shall preclude the application of other provisions of law relating to labeling.

15 U.S.C. § 45a.

After this statute was passed, the FTC issued an Enforcement Policy Statement "to give general guidance on making and substantiating U.S. origin claims."  "Made in USA" and Other U.S. Origin Claims; Notice, 62 Fed. Reg. 63,755, 63,765 (Dec. 2, 1997).  In that Statement, the FTC:

> set[ ] forth the requirement that where a product is labeled or advertised as "Made in USA," the marketer should possess and rely upon a reasonable basis that the product is all, or virtually all, made in the United States.  A product that is "all or virtually all" made in the United States is described typically as one in which all significant parts and processing that go into the product are of U.S. origin, *i.e.*, where there is only a *de minimus*, or negligible, amount of foreign content.

*Id.*  If further guidance is necessary, the FTC will consider three factors:  "whether the final assembly or processing of the product took place in the United States; the portion of the total manufacturing cost of the product that is attributable to U.S. parts and processing; and how far removed from the finished product any foreign content is."  *Id.*

The parties agree this section of the FTCA allows for the use of a "Made in U.S.A." label even if the product includes or contains material from a foreign country.  They also agree that California Business and Professions Code § 17533.7 does not allow the use of a "Made in U.S.A." label unless the product and all articles, units and

parts thereof were "entirely or substantially made, manufactured, or produced" in the United States. *See* Cal. Bus. & Prof. Code § 17533.7.[1] The parties agree these statutes set out different standards for the use of a "Made in U.S.A." label, but disagree as to whether that difference results in conflict preemption.

As stated above, conflict preemption exists "'where it is impossible for a private party to comply with both state and federal law.'" *Valle del Sol*, 732 F.3d at 1032 (quoting *Crosby*, 530 U.S. at 372). Defendants argue it is impossible for them to comply with these two statutes when it comes to products like those at issue here, namely products that contain some foreign content, because the federal law would allow them to use the "Made in U.S.A." label while the state law would not as parts of the subject merchandise were allegedly made outside of the United States. The Court agrees that with these types of products California law prohibits the use of a "Made in U.S.A." label whereas federal law does not. However, the Court disagrees that this results in conflict preemption.

Although the laws set out different standards for the use of "Made in U.S.A." labels, it would not be impossible for Defendants to comply with both laws. Outside California, Defendants could use the "Made in U.S.A." labels, but inside California, they could not. This may be burdensome for Defendants, but it is not impossible for them to do so. *See Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 429-30 (9th Cir. 2014) (quoting *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F.Supp.2d 196, 205 (D. Mass. 2012)) (internal quotation marks omitted) ("To the extent that the federal captioning scheme and the DPA may require different captioning requirements or deadlines, these differences do not 'create a

---

[1] Cal. Bus. & Prof. Code § 17533.7 states in its entirety: "It is unlawful for any person, firm, corporation or association to sell or offer for sale in this State any merchandise on which merchandise or on its container there appears the words 'Made in U.S.A.,' 'Made in America,' 'U.S.A.,' or similar words when the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States." Cal. Bus. & Prof. Code § 17533.7.

positive repugnancy between the two laws' or otherwise demonstrate an irreconcilable conflict between federal law and the DPA because CNN can comply with both.")

Defendants also argue California law creates an obstacle to the accomplishment and execution of the FTCA.[2] They assert one of the purposes of the FTCA "was to give the FTC authority to determine the circumstances in which use of ["Made in U.S.A."] labels would be misleading or not misleading." (Reply Br. at 8.) They also argue the statute evidences Congress intent to preempt the field of "Made in U.S.A" labels.[3]

The Court agrees with Defendants that one purpose of the FTCA was to give the FTC authority to regulate "Made in U.S.A." labels. However, delegating that authority to the FTC is not the same as depriving other agencies or states from exercising that same authority. The general provision of the FTCA gives the FTC the power to direct and prevent all manner of persons and entities "from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or

---

[2] It is worth noting the California law and the federal law are meant to serve the same purpose, namely to prevent the deceptive marketing and promotion of products as "Made in U.S.A." *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 689 (2006) (stating polices underlying the federal and California law are the same). Accurate labeling of this information, in turn, allows consumers to make informed decisions about whether their purchases "support fellow Americans" or "harm the American manufacturing base[.]" 62 Fed. Reg. at 63758-59. These corresponding benefits are echoed in the California law. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 329 (2011) (quoting *Colgan*, 135 Cal. App. 4th at 689) (stating purpose of California law "'is to protect consumers from being misled when they purchase products in the belief that they are advancing the interests of the United States and its industries and workers.'") Given that the purposes of the statutes are the same, it is not apparent on the present facts how compliance with one would be an obstacle to the other.

[3] Defendants deny any reliance on field preemption, but their argument sounds otherwise. Defendants' reluctance to argue field preemption is understandable as it would require a showing that Congress, acting within its proper authority, has determined the field of "Made in U.S.A." labels "must be regulated by its exclusive governance." *Arizona v. United States*, 132 S.Ct. at 2501. As stated by the Supreme Court, "The intent to displace state law altogether can be inferred from a framework of regulation 'so pervasive ... that Congress left no room for the States to supplement it' or where there is a 'federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Neither of these inferences is reasonable given the statutory language at issue here (15 U.S.C. § 45a) or the general subject matter of the statute (consumer protection), which has traditionally been a matter of state concern. *Chae v. SLM Corp.*, 593 F.3d 936, 944 (9th Cir. 2010).

affecting commerce." 15 U.S.C. § 45(a)(2). However, states are free to exercise that power, as well, as evidenced by the many state consumer protection laws, including those in California. Indeed, "consumer protection laws have traditionally been in state law enforcement hands." *Chae*, 593 F.3d at 944. Thus, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice*, 331 U.S. at 230 (citations omitted). The delegation of authority to the FTC to regulate "Made in U.S.A." labels does not demonstrate a "clear and manifest purpose" to supersede state laws on such labels.

Defendants' argument that the statute evidences Congress's intent to preempt the field of "Made in U.S.A." labels is, likewise, unpersuasive. In support of this argument, Defendants rely on that portion of the statute that reads: "This section only applies to such labels. Nothing in this section shall preclude the application of other provisions of law relating to labeling." 15 U.S.C. § 45a. Defendants read this portion of the statute as indicating that Congress intended this statute to be the exclusive authority on "Made in U.S.A." labels while leaving other labeling concerns open to other regulations. However, this portion of the statute can also be read as an indication that Congress intended this statute to apply only to "Made in U.S.A." labels as opposed to other kinds of labels, *e.g.*, qualified U.S. origin claims, claims about specific processes or parts and comparative claims. *See* 62 Fed. Reg. at 63,769-70. Contrary to Defendants' suggestion, there is nothing in this portion of the statute that indicates Congress intended to preempt the field of "Made in U.S.A." labels.

In light of the above, the Court finds Defendants have failed to show Plaintiff's claims are preempted by the FTCA.

/ / /

/ / /

/ / /

**B.   The TFPIA**

In addition to arguing preemption under the FTCA, Defendants argue Plaintiff's claims are preempted by the TFPIA. Specifically, Defendants rely on 15 U.S.C. § 70b(b)(5), which states:

> Except as otherwise provided in this subchapter, a textile fiber product shall be misbranded if a stamp, tag, label, or other means of identification, or substitute therefor authorized by section 70c of this title, is not on or affixed to the product showing in words and figures plainly legible, the following: ...
>
> (5) If it is a textile fiber product processed or manufactured in the United States, it be so identified.

15 U.S.C. § 70b(b)(5). Defendants argue, as they did with the FTCA, that it is impossible for them to comply with this federal statute and California law.

Defendants argue the TFPIA *requires* them to use a "Made in U.S.A." label even if the garment includes foreign-made materials, whereas California law *prohibits* the use of a "Made in U.S.A." label unless the entire garment is made entirely or substantially in the U.S.A. The Court agrees with the latter statement, but disagrees with the former.

Although the TFPIA requires that textile fiber products processed or manufactured in the United States be so identified, it does not require an unqualified "Made in U.S.A." label if the product is made, either in whole or in part, of imported materials. Rather, in that case the TFPIA requires that the label disclose those facts, *i.e.*, that it state "Made in USA of imported fabric." *See* 16 C.F.R. § 303.33(a)(3). Thus, contrary to Defendants' suggestion, the TFPIA does not require labeling that is prohibited by California law. As with the FTCA, it is not impossible for Defendants to comply with both statutes. They can simply indicate on the label that their products were "Made in U.S.A. of imported fabric and components," or something similar that accurately describes where the parts of the product and the product as a whole were sourced and made.

/ / /

Defendants argue this is not a viable option because California law prohibits the use of "Made in U.S.A." on a label even if it is qualified with other language. In other words, Defendants assert a qualified label such as "Made in U.S.A. of imported fabric and components" would violate California law regardless of the qualifying language because the label still states the product is "Made in U.S.A." In support of this argument, Defendants rely on the statute and case law.[4] However, neither supports Defendants' argument.

On its face, the statute makes it unlawful to sell or offer for sale in California any merchandise using the words "Made in U.S.A." or similar words if "the merchandise or any ... part thereof [ ] has been entirely or substantially made, manufactured, or produced outside of the United States." Cal. Bus. & Prof. Code § 17533.7. The statute is silent on qualified labels, such as "Made in U.S.A. of imported fabric and components," and thus fails to provide any guidance on whether such labels would violate the law.

Case law also fails to provide any guidance as the labels at issue in the cases were unqualified, *i.e.*, they simply stated the products were "Made in U.S.A." *See Kwikset*, 51 Cal. 4th at 317; *Colgan*, 135 Cal. App. 4th at 672.

The lack of guidance on qualified labels, however, does not preclude the Court from using its common sense. California Business and Professions Code § 17533.7 is part of California's False Advertising Law ("FAL"), which prohibits false and misleading advertising statements, in general. *See* Cal. Bus. & Prof. Code § 17500. If a product is made in the U.S.A. with imported fabric and components, and the label accurately reflects that, then there is no falsity or misrepresentation. The product is

---

[4] Defendants also rely on Plaintiff's Complaint, which they read as targeting all products labeled with the phrase "Made in U.S.A.," whether that phrase is qualified or not. (Reply Br. at 5 n.3.) The Court does not read Plaintiff's Complaint to be so broad. Rather, it appears Plaintiff is focused on those products that include an unqualified "Made in U.S.A." label where the product includes component parts that were either sourced or manufactured overseas and products that include a label stating "Made in U.S.A. of imported fabric" when the products include parts, other than just the fabric, that were sourced or manufactured overseas. Plaintiff does not appear to be targeting products that include a qualified "Made in U.S.A." label regardless of its accuracy.

what it is described to be, "Made in U.S.A. of important fabric and components." The words "Made in U.S.A." or "U.S.A." do not make the label inherently misleading, and they must be read in context. If the purpose of the false advertising law is to protect consumers from fraud and deceit, it is difficult to see how that purpose is not served, or is affirmatively violated, by a label that accurately describes where a product and all its component parts are sourced and manufactured. Defendants' argument to the contrary, that section 17533.7 prohibits such labels, even when they are accurate and not misleading, strains the purpose of the statute, the FAL in general and common sense.

In light of the above, the Court finds Defendants have failed to show Plaintiff's claims are preempted by the TFPIA.

## III.
## CONCLUSION

In sum, Defendants have not shown Plaintiff's claims are preempted by either the FTCA or the TFPIA. Accordingly, the Court denies Defendants' motion to dismiss.

**IT IS SO ORDERED**.

DATED: October 27, 2014

HON. DANA M. SABRAW
United States District Judge