JOHN H. DONBOLI (SBN: 205218)
E-mail: jdonboli@delmarlawgroup.com
JL SEAN SLATTERY (SBN: 210965)
E-mail: sslattery@delmarlawgroup.com
DEL MAR LAW GROUP, LLP
12250 El Camino Real, Suite 120
San Diego, CA 92130
Telephone: (858) 793-6244
Facsimile: (858) 793-6005

Attorneys for Plaintiff: DAVID PAZ, an individual and on behalf of all others similarly situated

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PAZ, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AG ADRIANO GOLDSCHMIED, INC., a California corporation; NORDSTROM, INC., a Washington Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 3:14-cv-01372-DMS-DHB<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION: (1) GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT; (2) SCHEDULING A FINAL APPROVAL HEARING; AND (3) DIRECTING THAT NOTICE BE SENT TO CLASS MEMBERS**<br><br>Date: January 8, 2016<br>Time: 1:30 p.m.<br>District Judge: Hon. Dana M. Sabraw<br>Courtroom: 13A |

1

## I. **INTRODUCTION**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff David Paz ("Plaintiff"), on behalf of himself and the proposed Settlement Class he represents, respectfully moves for entry of an order: (l) preliminarily approving the proposed settlement[1] in the above-captioned class action litigation with Defendants AG ADRIANO GOLDSCHMIED, INC. ("AGAG") and NORDSTROM, INC. ("Nordstrom") (collectively, "Defendants"); (2) scheduling a Final Approval Hearing (sometimes referred to as a "Fairness Hearing"); and (3) directing that notice of the proposed settlement be given to Class Members upon approval of the form and method for providing class-wide notice. At the Final Approval Hearing, the following will be considered: (i) the request for final approval of the proposed settlement, and (ii) the entry of the Final Judgment and Injunction. Plaintiff also intends to apply to this Court for an award of attorneys' fees and reimbursement of expenses to Class Counsel, and an enhancement fee award to Plaintiff for his service as the class representative at that time.

After more than a full year of hard-fought litigation, and after participating in a full-day mediation before the Hon. Irma E. Gonzalez (Ret.) of JAMS, the parties ultimately reached a settlement on October 28, 2015. The Settlement is believed to be a fair, adequate and reasonable. The Settlement permits participating Class Members (those who complete and return a claim form) to obtain either: one (1) $20 Promotional Code for each Class Product claimed, or one (1) pair of AGAG pants (the consideration is more fully detailed below).

The measure of restitution was not arbitrarily determined; rather, it was discussed and negotiated at length at mediation with the aid of Judge Gonzalez (Ret.) and is based on calculations of the amount of foreign-made components in

---

[1] The Settlement Agreement is attached as Exhibit 1 to the accompanying Declaration of John H. Donboli ("Donboli Decl.").

2

14-cv-01372-DMS-DHB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL

Defendants' jeans products (i.e., the "Class Products") in conjunction with a factoring of the risks of potentially receiving no monetary recovery to the Class at time of trial.

All in all, this Settlement is a fair result for the class. Defendants are no longer engaging in the conduct that gave rise to this action because AGAG will be forever enjoined from using an unqualified "Made in USA" label on its Jeans[2]. (See Final Judgment and Injunction, attached as Exhibit "E" to Settlement Agreement). Future customers will also enjoy the benefits of AGAG's newly revised country of origin labeling practices.[3]

If Plaintiff would have rejected the Settlement and continued to litigate this action through trial, there would have been a significant risk that no restitution would have been obtained to the Class given the unsettled nature of California law pertaining to how to properly quantify and measure restitution in false advertising cases (such as this case). In view of this risk, the Settlement is undoubtedly fair, just and adequate.

## II. NATURE OF THE CASE

The Action alleged that Defendants committed unlawful and unfair business practices by falsely labeling their jeans products ("Jeans") as "Made in USA" in violation of, *inter alia*, California's Unfair Competition Law ("UCL") (codified at Cal. Bus. & Prof. Code §§ 17200 *et seq.*) and California's "Made in USA Statute" (codified at Cal. Bus. & Prof. Code § 17533.7).

Plaintiff alleged that contrary to Defendants' "Made in USA" claim, the Jeans were manufactured and/or produced from multiple <u>component parts</u> that were manufactured outside of the United States in violation of California law

---

[2] Defendants stipulated to entry of an injunction in this regard.

[3] California recently amended the California "Made in USA" statute on or about September 1, 2015. The new amendment will not take effect until January 1, 2016 and will not materially alter any aspect of this proposed settlement.

3

and/or federal law. Specific to the Plaintiff Transaction, Plaintiff alleged that major subcomponents of Defendants' Jeans that he purchased were foreign made, including but not limited to the trim, fabric, and/or zippers. Plaintiff also alleged that Defendant's conduct constituted false advertising and was violative of the California Consumers Legal Remedies Act.

Defendants denied and continue to deny Plaintiff's allegations.

### III. **PROCEDURAL HISTORY**

On or about June 4, 2014, Plaintiff initiated litigation by filing a putative class action complaint in the United States District Court Southern District of California, styled as *Paz v. AG Adriano Goldschmied, Inc., et al* Case No. 14CV1372DMS DHB (the "Action").

The Action alleged that Defendants violated various California laws, including California Business & Professions Code § 17200 *et seq.*; California Business & Professions Code § 17533.7; and the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. ("CLRA") as it relates to Defendants' use *in California* of the statement "Made in U.S.A." on labeling for its Jeans that contained less than 100% domestic content. These claims extended to Plaintiff and all other members of the putative California class.

On or about September 3, 2014, Defendants filed a Motion to Dismiss based in large part on federal preemption. [Docket No. 9]. On or about September 19, 2014, Plaintiff filed his Response in Opposition to the Motion to Dismiss. [Docket No. 11]. Defendants thereafter filed a Reply on or about September 26, 2014. [Docket No. 12]. On or about October 27, 2014 the Court issued an Order denying the Motion to Dismiss. [Docket No. 14].

On or about November 20, 2014, Defendants filed their Answers. [Docket Nos. 15, 16].

On or about December 22, 2014, Defendants filed a Motion to Amend and

Certify Order for Interlocutory Review Pursuant to 28 U.S.C. section 1292, subdivision (b) and to Stay Proceeding Pending Appeal. [Docket No. 18]. On or about January 5, 2015, Plaintiff filed his Response in Opposition to this Motion. [Docket No. 19]. On or about January 27, 2015, the Court issued an Order Denying the Motion to Amend and Certify Order for Interlocutory Review Pursuant to 28 U.S.C. section 1292, subdivision (b) and to Stay Proceeding Pending Appeal. [Docket No. 25].

On or about February 10, 2015 an Early Neutral Evaluation Conference was held before the Hon. David H. Bartick and an Order was issued thereafter. [Docket No. 27].

In addition to the law and motion practice detailed above, Plaintiff also committed a considerable amount of time to propounding extensive written discovery to Defendant and preparing for mediation in April, which led to significant guideposts being established towards resolution that were further negotiated over the following six months (that ultimately led to the Settlement Agreement being finalized and signed on October 28, 2015). Included in this time was the creation of a viable damages/restitution model that required obtaining and analyzing detailed summaries of Defendant's cost, pricing, sales, and labeling information for its jeans products (i.e., the "Class Products). This evaluation (done in conjunction with Plaintiff's consultant/expert) was also necessary so the parties could not only properly evaluate the case for purposes of mediation, but also so Plaintiff could begin preparing and generally outlining Plaintiff's motion for class certification. At the same time, Defendants undertook significant investigation to determine the validity of Plaintiff's claims.

**IV. CLASS DEFINITION**

Plaintiff agreed to settle this Action on behalf of a class of similarly situated persons in California who purchased AGAG-brand garment product that contained

5

14-cv-01372-DMS-DHB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

any foreign-made component parts that was labeled as "MADE IN USA" or "MADE IN THE USA OF IMPORTED FABRIC" (the "Class Products"), from June 4, 2010 to December 31, 2015, for non-commercial use (the "Settlement Class"). Excluded from the Settlement Class are all persons who are employees, directors, officers, and agents of Defendants or its subsidiaries and affiliated companies, as well as the Court and its immediate family and staff. (Donboli Decl., ¶ 5; Exhibit "1" thereto at ¶¶ A.7, A.24, A.29).

## V. SIZE OF CLASS

Defendant AGAG (the manufacturer) sold approximately 1 million units of Class Products in California during the class period. The average price per garment is approximately $200.00, which amounts to gross sales in California of approximately $200 million. (Donboli Decl., ¶ 6). This is undoubtedly a significant sized class under any definition of the term.

## VI. DESCRIPTION OF THE PROPOSED SETTLEMENT

The Parties agreed to a proposed settlement that, if approved by this Honorable Court, will result in dismissal of the Action with prejudice and the provision of certain benefits to the members of the Class. Under the terms of the Settlement Agreement, if the settlement is granted final approval status by the Court, Defendant will distribute either one (1) $20 Promotional Code for each Class Product claimed, or one (1) pair of AGAG pants, subject to the following terms and conditions, as determined by the Class Administrator after review and evaluation of each qualifying claimant's Claim Form:

    a. Class Members who purchased two or more Class Products are not permitted to split their claims to obtain both Promotional Codes and AGAG pants, but must choose one or the other option exclusively.

    b. Each eligible class member, as determined by the Claims Administrator, shall receive by mail either one (1) $20 Promotional

6

|   |   | Code per product purchased, or one (1) pair of AGAG pants per Class Product purchased. In the event any class member claims to have purchased more than two (2) Class Products, the class member must establish proper proof of purchase of such additional Class Products (with receipts, etc.). |
|---|---|---|
|   | c. | The Promotional Codes can be used toward the purchase of any AGAG product available at [www.agjeans.com](www.agjeans.com) at the time of purchase. The Promotional Codes shall be fully transferrable. Up to two (2) Promotional Codes can be used per transaction. The Promotional Codes cannot be used in combination with coupons, discounts, or other promotional pricing that may be offered by AGAG. |
|   | d. | The AGAG pants shall be of AGAG's selection, from current or prior seasons, but in the size and for the gender specified on the Class Member's claim form. For purposes of this Settlement, AGAG will set aside 25,000 pairs of pants to fulfill claims from Qualifying Claimants who choose to receive AGAG pants on their respective Claim Forms. AGAG is not required to distribute more than 25,000 pairs of pants under this Settlement. If the total number of pairs of pants selected by Qualifying Claimants exceeds 25,000, AGAG may, in its discretion, elect to either (i) distribute more than 25,000 pairs of pants to fulfill all Qualifying Claimants' selections or (ii) fulfill Qualifying Claimants' selections up to 25,000 pairs of pants on a first-come/first-served basis and distribute $20 Promotional Codes to all other Qualifying Claimants. |

(Donboli Decl., ¶ 7; Exh. 1 at ¶¶ D.2, F.3). Any Class Member who completes a Claim Form to attest to his purchase of a qualifying Class Product during the Class Period shall receive the restitution detailed above. (Donboli Decl., ¶ 7; Exh. 1 at ¶

D.2).

The measure of restitution (in relation to the $20.00 promotional code) was not arbitrarily determined; rather, it was discussed and negotiated at length at mediation and after and is based on calculations off of the amount of foreign-made component parts in the Class Products in conjunction with a factoring of the risks of potentially receiving no monetary recovery to the Class at time of trial. (Donboli Decl., ¶ 8).

The pants are high-end pant products valued *at least* $160.00 per pair of pants. (Donboli Decl., ¶ 9). Because AGAG agreed to distribute 25,000 pairs of pants, the undisputed original retail value of the jeans distribution is $4 million. (Donboli Decl., ¶ 9; Exh. 1 at ¶ E.2).

The settlement will be administered by a professional Claims Administrator to administer the claims and payment process. Defendants and/or the Claims Administrator shall also obtain an appropriate URL specifically to handle the Settlement process, such as agagsettlement.com (the "Settlement Website"). (Donboli Decl., ¶ 10; Exh. 1, at ¶¶ A.30, D.4). The Claims Administrator shall report any invalid claims and reports all such determinations of invalidity to both Class Counsel and Defendant's counsel in a timely manner. (Donboli Decl., ¶ 10; Exh. 1, at ¶ F.5).

Class Counsel intends to file and have heard a motion for the recovery of attorneys' fees and costs to be approved by this Honorable Court, including all reasonable fees, costs and expenses related to Plaintiff's prosecution of the Action. The parties agreed to a "*not to exceed*" amount in the amount of $175,000.00. Class Counsel shall also seek confirmation by this Court, at that time, of a single $5,000.00 payment as an incentive award to Plaintiff David Paz for serving as the class representative. Defendant agreed not to oppose these requests as long as the requested amounts are at or below the above-stated amounts. (Donboli Decl., ¶ 11;

Exh. 1, at ¶¶ G.1, G.4).

## VII. NOTICE AND ADMINISTRATION OF THE SETTLEMENT

Upon entry of the Preliminary Approval Order, Defendants, in cooperation with the Claims Administrator, shall take the following actions:

1. Defendant AGAG shall direct the Claims Administrator to mail the Notice to any and all members of the Settlement Class to the extent that Defendant AGAG possesses such information in its corporate records. Defendant AGAG shall provide this information to the Claims Administrator within 20 days of entry of the order granting Preliminary Approval. The Claims Administrator shall thereafter be tasked with mailing the Postcard Notice (in the form attached to Exhibit F of the Agreement of Settlement) to the potential class members.
2. The Claims Administrator will arrange for publication of the Notice in publications that adequately cover the consumers of AGAG products, as determined by the Claims Administrator in its reasonable judgment.
3. Defendants shall provide notice of the settlement on their respective websites for the duration of the Claims Period with a hyperlink that will send consumers directly to the Settlement Website.

(Donboli Decl., ¶ 12; Exh.1, at Section E).

These methods are designed to meaningfully reach the largest possible number of potential Class Members. All costs associated with providing notice and administering the claims, including the costs associated with preparing, printing and disseminating the Notice, as directed by the Court in the Preliminary Approval Order, shall be paid by Defendant AGAG (not to exceed $90,000). (Donboli Decl. ¶ 13; Exhibit "A" thereto at ¶ F.9).

///

9

14-cv-01372-DMS-DHB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

## VIII. THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

### A. The Settlement Approval Process

The law favors settlements, particularly in class actions and complex cases where substantial resources can be conserved by avoiding the time, costs and rigors of prolonged litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (2003) ["By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise."].

Where, as here, the parties propose to resolve the claims of a certified class through settlement, they must obtain the court's approval. Fed. R. Civ. Proc. 23(e)(1)(A). The typical process for approving class action settlements is described in the FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION §§ 21.632-.635 (4th ed. 2004): (1) preliminary approval of the proposed settlement at an informal hearing; (2) dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) A "formal fairness hearing," or final approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. *Id*. This procedure, commonly employed by federal courts, serves the dual function of safeguarding class members' procedural due process rights and enabling the court to fulfill its role as the guardian of class members' interests.

Plaintiff respectfully asks this Court to grant preliminary approval of the proposed Settlement. At this stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." MANUAL FOR COMPLEX

LITIGATION § 21.632. The Court should grant preliminary approval if the settlement has no obvious deficiencies and "falls within the range of possible approval." NEWBERG ON CLASS ACTIONS § 11.25.

At the next stage of the approval process, the formal fairness hearing, courts consider arguments in favor of and in opposition to the settlement. According to the Ninth Circuit, the fairness hearing should not be turned into a "trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Com'n of City and Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). "Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute…." *Id.* Rather, the inquiry "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Id.*

### B. The Proposed Settlement is Presumptively Fair and Easily Meets the Requirements for Preliminary Approval

Courts generally employ a multi-prong test to determine whether preliminary approval is warranted. A proposed class action settlement is presumptively fair and should be preliminarily approved if the Court finds that: (1) the negotiations leading to the proposed settlement occurred at arm's length; (2) there was sufficient discovery in the litigation for the plaintiff to make an informed judgment on the merits of the claims; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objection. *Young v. Polo Retail,* Case No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006); *see also* NEWBERG ON CLASS ACTIONS § 11.41. The Settlement easily satisfies these requirements.

///

11

14-cv-01372-DMS-DHB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

### 1. **The Settlement is the Product of Serious, Informed and Noncollusive Negotiations**

This settlement is the result of extensive and hard-fought negotiations. Defendants expressly denied and continue to deny any wrongdoing or legal liability arising out of the conduct alleged in the Action. Nonetheless, Defendants concluded that it is desirable that this Action be settled in the manner and upon the terms and conditions set forth in the Agreement of Settlement in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals. Defendants also determined that it is desirable and beneficial to put to rest the released claims of the Settlement Class.

Class Counsel (and presumably Defendants' counsel) conducted a thorough investigation into the facts of the class action, including diligently pursuing an investigation of the relevant facts. Class Counsel is of the opinion that the settlement with Defendants for the consideration and on the terms set forth in the Agreement of Settlement is fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendants, and the potential risk of no monetary recovery. (Donboli Decl., ¶ 4)

Here the litigation has been hard-fought with aggressive and capable advocacy on both sides. Accordingly, "[t]here is likewise every reason to conclude that settlement negotiations were vigorously conducted at arm's length and without any suggestion of undue influence." *In re Wash. Public Power Supply System Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989). ["Counsels' opinions warrant great weight both because of their considerable familiarity with this litigation and because of their extensive experience in similar actions"].

///
///

## 2. The Settlement Has No "Obvious Deficiencies" and Falls Well Within the Range for Approval

The proposed settlement herein has no "obvious deficiencies" and is well within the range of possible approval. All Class members will receive the same opportunity to participate in and receive restitution. It is undeniable that the goal of this litigation, to seek redress for the Class, has been met.

There is a substantial risk, given the current legal landscape in terms of properly quantifying and measuring damages in cases predicated on violations of the California and/or federal "Made in USA" standards (or false advertising cases in general), that, if this action was not settled, Plaintiff would have been unable to obtain any restitution at time of trial. (Donboli Decl., ¶ 15).

The primary factor that supports resolution at this time, from Plaintiff and Class Counsel's perspective, are the challenges in quantifying and specifically measuring the amount of restitution to Class Members.[4] Restitution under the UCL is limited to measurable amounts acquired by a defendant from consumers by means of unfair competition. Section 17203 of the unfair competition law expressly authorizes courts to make "such orders ... as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person ... any money or property, real or personal, which may have been acquired by means of such unfair competition." As the California Supreme Court held in *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149 (2003) the "object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest."

---

[4] This would require Plaintiff to expend over $100,000 in expert fees, *at a minimum*, to develop a restitution model that *might* be approved by this Court as there is no clear guideline on how to quantify restitution in UCL false advertising cases. (Donboli Decl., ¶ 16).

13

As referenced above, there was a serious risk that Plaintiff would only be able to establish injunctive relief at trial, which would have left Class Members with no monetary relief. In light of the above-referenced risk, expense, and complexity of this case, the parties agreed to resolve this matter as set forth in the Settlement Agreement. (Donboli Decl., ¶¶ 15-16).

### 3. **The Settlement Does Not Improperly Grant Preferential Treatment To the Class Representative or Segments Of The Class**

The relief provided in the settlement will benefit all Class Members equally. The settlement does not improperly grant preferential treatment to Plaintiff or segments of the Class in any way. Each qualified Class Member, including Plaintiff, who files a timely claim, shall receive the aforementioned restitution. Plaintiff will receive no more than any other Class Member who submits a timely claim. In addition, the representative plaintiff will apply to the Court for a modest service award of $5,000 to the extent permitted by this Court (enhancement fees are at times awarded in the $50,000 range).

### 4. **The Stage Of The Proceedings Are Sufficiently Advanced To Permit Preliminary Approval Of The Settlement**

The stage of the proceedings at which this settlement was reached militates in favor of preliminary approval and ultimately, final approval of the settlement. The agreement to settle did not occur until Class Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation. Class Counsel has conducted a thorough investigation into the facts of the class action, including diligently pursuing an investigation of Class Members' claims against Defendants. (Donboli Decl., ¶¶ 3, 4).

Here, Class Counsel obtained sufficient information from Defendants after

14

conducting extensive discovery, including serving extensive written discovery and exchanging detailed sales, pricing, and financial information in advance of mediation. Extensive due diligence performed by the parties confirmed the cost associated with each component part in the Class Products, which was then used to calculate the proper measure of restitution.[5]

## IX. THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE

The Court has broad discretion in approving a practical notice program. The parties have agreed upon procedures by which the Class will be provided with notice of the Settlement. The notice is undoubtedly sufficient when, as in this case, it informs potential class members about the specific restitution that they could expect to receive under the settlement, the procedure for objecting, excluding oneself altogether from the settlement, the amount of fees and costs that may be awarded by the Court, and the date of the Final Approval Hearing.

This notice program was designed to meaningfully reach the largest possible number of potential Class Members, including publication and on Defendants' respective websites. It complies fully with applicable case law that the notice given should have a reasonable chance of reaching a substantial percentage of the Class Members. The notice program contemplated in this Settlement satisfies the requirements of due process, and is the best notice practicable under the circumstances and constitutes due and sufficient notice to all persons entitled thereto. Therefore, the proposed notice procedures comply fully with applicable case law because the notice should have a reasonable chance of reaching a substantial percentage of the Class members. See Manual for Complex Litigation (Fourth) § 21.311 at 291-92.

/ / /

---

[5] Plaintiff retained experienced class action attorneys in this case to represent himself and the Class. (See Donboli Decl., ¶¶ 17-18 for additional details in this regard).

## X. CONCLUSION

Plaintiff and Class Counsel believe that the proposed settlement is fair, reasonable and adequate, and warrants this Court's preliminary approval after weighing the substantial, certain, and immediate benefits of this settlement against the uncertainty of trial and appeal. Accordingly, Plaintiff respectfully requests that the Honorable Court preliminarily approve and sign the proposed Preliminary Approval Order filed contemporaneously herewith to permit the distribution and manner of notice. Plaintiff also respectfully requests that the Court schedule a Final Approval Hearing approximately 120 days from the date this Court signs the Preliminary Approval Order.

Dated: November 30, 2015

Respectfully submitted,

DEL MAR LAW GROUP, LLP

By: /s John H. Donboli
    John H. Donboli
    E-mail: jdonboli@delmarlawgroup.com
    JL Sean Slattery
    E-mail: sslattery@delmarlawgroup.com
    Attorneys for: DAVID PAZ, an individual and on behalf of all others similarly situated